UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------x
CAPITAL SOURCE, LLC, and THE CAPITAL
FORESIGHT LIMITED PARTNERSHIP,

                Plaintiffs,

           -against-

GOLDNER CAPITAL MANAGEMENT and
SAMUEL GOLDNER,

                Defendants.
------------------------------------------------------------------x

**MEMORANDUM AND ORDER**
24-CV-6284 (OEM) (JAM)

ORELIA E. MERCHANT, United States District Judge:

Plaintiffs Capital Source, LLC ("Capital Source") and The Capital Foresight Limited Partnership ("Capital Foresight") (collectively, "Plaintiffs") commenced this action against defendants Goldner Capital Management ("GCM") and Samuel Goldner ("Goldner") (collectively, "Defendants"), seeking to recover over $20 million dollars owed to Plaintiffs pursuant to five promissory notes. *See* Complaint, Dkt. 1 ("Complaint" or "Compl."). Goldner asserts eighteen affirmative defenses and eight counterclaims in response to Plaintiff's Complaint. *See* Amended Answer with Counterclaims, Dkt. 38 ("Amended Answer" or "Am. Answer").[1]

Before the Court is Plaintiffs' omnibus motion for summary judgment against Goldner and to dismiss Goldner's counterclaims,[2] as well as Plaintiffs' motion to strike portions of Goldner's

---

[1] The action against GCM has been stayed since October 6, 2024, due to an ongoing bankruptcy proceeding involving GCM. *See* Suggestion of Bankruptcy Defendant Goldner Capital Management LLC, Dkt. 9; Order, dated Oct. 6, 2024.

[2] *See* Memorandum of Law in Support of Plaintiffs' Omnibus Motion for Summary Judgment and to Dismiss, Dkt. 83 ("Mot."); Plaintiffs' Statement of Material Facts, Dkt 84 ("56.1 Statement"); Memorandum of Law in Opposition to Plaintiffs' Omnibus Motion for Summary Judgment and to Dismiss, Dkt. 91-15 ("Opposition" or "Opp'n"); Defendant's Statement and Counter-Statement Pursuant to Rule 56.1 ("56.1 Resp."); Memorandum of Law in Reply to Defendant's Opposition to Omnibus Motion for Summary Judgment and to Dismiss, Dkt. 89 ("Reply").

declaration, dated September 22, 2025.[3]  For the following reasons, Plaintiffs' omnibus motion is granted, and Plaintiffs' motion to strike is denied as moot.

**BACKGROUND**[4]

**A.  The Promissory Notes**

On May 20, 2022, Capital Source loaned Defendants and other entities, jointly and severally, the principal sum of $14,000,000.  *See* Declaration of Natenal "Naty" Saidoff ("Saidoff Decl."), Exhibit 1, Dkt 84-2 ("First Note").

On December 12, 2022, Capital Foresight loaned Defendants, jointly and severally, the principal sum of $1,500,000.  *See* Saidoff Decl., Exhibit 2, Dkt. 84-3 ("Second Note").  In connection with the Second Note, Defendants and others executed a loan modification agreement which, among other things, cross-defaulted the First Note to the Second Note.  *See* Saidoff Decl., Exhibit 3 § 2, Dkt. 84-4 ("Loan Modification Agreement").

On March 24, 2023, Capital Foresight loaned Defendants, jointly and severally, the principal sum of $1,300,000.  *See* Saidoff Decl., Exhibit 4, Dkt. 84-5 ("Third Note").

On March 29, 2023, Capital Foresight loaned Defendants, jointly and severally, the principle sum of $1,800,000.  *See* Saidoff Decl., Exhibit 5, Dkt. 84-6 ("Fourth Note").

---

[3] *See* Declaration of Sam Goldner, Dkt. 91 ("Goldner Declaration" or "Goldner Decl."); Plaintiffs' Motion to Strike Portion of Defendant Sam Goldner's Declaration, Dkt. 86; Defendant Sam Goldner's Memorandum of Law in Opposition to Plaintiff's Motion Pursuant to Rule 56(c)(4), Dkt. 94; Memorandum Reply to Opposition to Strike Portions of Defendant Sam Goldner's Declaration, Dkt. 95.

[4] The following facts are drawn from the parties' Local Rule 56.1 statements and attached exhibits.  Goldner disputes all the facts alleged in Plaintiff's 56.1 Statement but fails, for the most part, to controvert Plaintiffs' statements of fact with specific citations to admissible evidence, as required by Local Rule 56.1(d).  *See* 56.1 Resp.  Goldner directs the Court to the Goldner Declaration in response to each statement of material fact by Plaintiffs.  *Id.*  To the extent the Goldner Declaration or the evidence it references controverts an alleged fact, the Court notes so.  Otherwise, the facts alleged by Plaintiffs are deemed admitted for the purposes of summary judgment.  *See* Local Rule 56.1.

On April 26, 2023, Capital Foresight loaned Defendants, jointly and severally, the principle sum of $2,000,000. *See* Saidoff Decl., Exhibit 6, Dkt. 84-7 ("Fifth Note") (collectively with the First Note, Second Note, Third Note, and Fourth Note, the "Notes"; each a "Note").

In addition to the Loan Modification Agreement that cross-defaulted the First and Second Notes, the Third, Fourth, and Fifth Notes contain cross-defaulting provisions, rendering an event of default under any one of the Notes a default under every Note. *See* Loan Modification Agreement § 2; Third Note § 4; Fourth Note § 4; Fifth Note § 4.

Each Note contains a provision stating that interest shall accrue and be paid monthly. *See* First Note § 2; Second Note § 1; Third Note § 1; Fourth Note § 1; Fifth Note § 1. Further, each Note states that the entire principal balance, together with accrued and unpaid interest and any other amounts due under the Note, shall be due and payable on the "Maturity Date" unless accelerated by Plaintiffs. *See* First Note § 2; Second Note § 1; Third Note § 1; Fourth Note § 1; Fifth Note § 1. The Maturity Date for the First Note was May 19, 2025, and the Maturity Date for the Second Note was January 12, 2023. First Note § 2(c); Second Note § 1(b).

Goldner executed each Note on his own behalf and on behalf of GCM. *See* First Note; Second Note; Third Note; Fourth Note; Fifth Note.

**B. The Default Notice and the Omnibus Amendments**

Defendants did not pay the principal of the Second Note plus interest by its January 12, 2023, Maturity Date. 56.1 Statement ¶ 16. On January 27, 2023, Plaintiffs sent Defendants a "Notice of Event of Default." *See* Saidoff Decl., Exhibit 7, Dkt. 84-8 ("Default Notice"). In the Default Notice, Plaintiffs notified Defendants that their failure to pay the amounts owed under the Second Note constituted a default under the Second Note and a cross-default under the First Note pursuant to the Loan Modification Agreement. *See id.* at 3-6. Plaintiffs thereby demanded

3

immediate payment of the entire unpaid balance of principle, plus interest, on the First Note and Second Note as well as costs and reasonable attorney's fees.[5] *See id.* at 4-6.

On March 29, 2023, the parties executed an Omnibus Amendment to Loan Documents. *See* Saidoff Decl., Exhibit 8, Dkt. 84-9 ("First Omnibus Amendment").  On April 26, 2023, the parties executed a Second Omnibus Amendment to Loan Documents.  *See* Saidoff Decl., Exhibit 9, Dkt. 84-10 ("Second Omnibus Amendment") (together with the First Omnibus Amendment, "Omnibus Amendments"). Goldner executed the Omnibus Amendments on his own behalf and on behalf of GCM.  *See* First Omnibus Amendment; Second Omnibus Amendment.

Section 6 of the Second Omnibus Amendment states that Defendants "acknowledge and agree that there are currently multiple defaults under the [Notes]."  Second Omnibus Amendment § 6.  It further states that Defendants "acknowledge receipt of notice from [Plaintiffs] regarding such Defaults" and that Defendants "acknowledge and agree that notwithstanding the extension of further credit . . . [Plaintiffs have] not waived such Maturity Default and nothing herein shall . . . constitute a waiver or release of any default by [Defendants] . . .  or a limitation on the exercise of, any of the rights or remedies available at law, in equity or under the Loan Documents arising from such default."  *Id.*

Section 8 of the Second Omnibus Amendment, entitled "Reaffirmation of Obligations," states:

> This Amendment is, in part, a reaffirmation of the obligations, indebtedness and liability of [Goldner, GCM, and others] to [Plaintiffs] as evidenced by the Loan Documents. [Goldner, GCM, and others] and each of them, acknowledge and agree that, except as specified herein, all of the terms and conditions of the Loan Documents are and shall remain in full force and effect, without waiver or modification of any kind whatsoever, and are ratified and confirmed in all respects.

---

[5] Pursuant to the terms of the Notes, Plaintiffs are entitled to recover all reasonable attorney's fees, costs of suit, and other expenses incurred in connection with a default or action to enforce the terms of the Notes.  *See* First Note § 10; Second Note § 9; Third Note § 9; Fourth Note § 9; Fifth Note § 9.

Second Omnibus Amend § 8.  Section 14 of the Second Omnibus Amendment further states:

> [Goldner, GCM, and others], on behalf of themselves, their respective successors and assigns, and each of them, do each hereby forever relieve, release, acquit and discharge [Plaintiffs] and their predecessors, successors and assigns, and their respective past and present attorneys, accountants, insurers, representatives, affiliates, partners, subsidiaries, officers, employees, directors, and shareholders, and each of them (collectively, the "Released Parties"), from any and all claims, debts, liabilities, demands, obligations, promises, acts, agreements, costs and expenses (including, but not limited to, attorneys' fees), damages, injuries, actions and causes of action, of whatever kind or nature, whether legal or equitable, known or unknown, suspected or unsuspected, contingent or fixed, which [Goldner, GCM, and others], or any of them, now own or hold or have at any time heretofore owned or held or may at any time hereafter own or hold against the Released Parties, or any of them, by reason of any acts, facts, transactions or any circumstances whatsoever occurring or existing through the date of this Amendment, including, but not limited to, those based upon, arising out of, appertaining to, or in connection with the Recitals above, the Loans, the Loan Documents, the facts pertaining to this Amendment, any collateral heretofore granted to [Plaintiffs] or granted in connection herewith, or to any other obligations of [Goldner, GCM, and others] to [Plaintiffs], all jointly and severally.

Second Omnibus Amendment § 14.

### C.  The May 2023 Email and Memorandum of Understanding

On May 18, 2023, Natanel Saidoff ("Saidoff")[6] emailed Goldner regarding profit sharing for a contemplated business venture.  *See* Goldner Decl., Exhibit J, Dkt. 91-10 ("May 2023 Email").  On May 31, 2023, Capital Foresight and GCM executed a Memorandum of Understanding pertaining to that business venture, wherein Capital Foresight agreed to acquire certain assets, namely, skilled nursing facilities, from GCM and its affiliates.  *See* Goldner Decl., Exhibit I, Dkt. 91-9 ("MOU").  Goldner executed the MOU on behalf of GCM.  *See id.*

### D.  The Demand Letter

On September 6, 2024, Plaintiffs sent Defendants a demand letter.  *See* Saidoff Decl., Exhibit 9, Dkt. 84-11 ("Demand Letter").  The Demand Letter identifies the five Notes, the Default

---

[6] Saidoff is the Chief Executive Officer of Saidoff, Inc., the Manager of Capital Source, and the authorized signatory of Saidoff Foresight, L.P., the sole general partner of Capital Foresight.  Saidoff Decl. ¶ 2.

Notice, and the Omnibus Amendments and notifies Defendants that "[p]ursuant to the terms [of] the Third, Fourth, and Fifth Notes (the 'Demand Notes') and the Omnibus Amendments, the Notes are cross defaulted; an Event of Default under any one of the Notes constitutes default under *every* Note." *Id.* at 2. The Demand Letter further states that "[p]ursuant Sections 1(b), 9, and 13 of the Demand Notes, the balance shall be due and payable in full on demand unless sooner accelerated as provided in each Note, and Lender may accelerate, without notice, the Maturity Date and declare the loans evidenced by the Notes due and payable immediately." *Id.* Asserting that the Demand Notes have "been in default since inception, Plaintiffs gave "notice that [Plaintiffs have] exercised [their] rights and remedies under the Demand Notes and accelerated the Maturity Date for all Demand Notes." *Id.* The Demand Letter thereby demanded payment on "all amounts due and payable immediately" under the Notes totaling $26,633,893.92 which included: (a) $18,206,999.94 under the First Note; (b) $1,768,138.48 under the Second Note; (c) $1,845,461.16 under the Third Note; (d) $2,543,850.00 under the Fourth Note; and (e) $2,269,444.34 under the Fifth Note. *See id.* at 3.

Defendants failed to pay the amounts identified in the Demand Letter. Saidoff Decl. ¶ 13. Capital Source remains the holder of the First Note. *Id.* ¶ 15. Capital Foresight remains the holder of the Second through Fifth Notes. *Id.* ¶ 16.

## PROCEDURAL HISTORY

Plaintiffs filed the Complaint on September 8, 2024. *See* Compl. On October 6, 2024, the Court stayed the action against GCM due to an ongoing bankruptcy proceeding, *see* Suggestion of Bankruptcy Defendant Goldner Capital Management LLC, Dkt. 9; Order, dated Oct. 6, 2024, and the action proceeded against Goldner.

Goldner answered the Complaint on December 31, 2024. *See* Answer, Dkt. 17 ("Answer"). On January 21, 2025, Plaintiffs filed a letter motion to strike Goldner's affirmative defenses. *See* Letter from Plaintiffs to the Court (Jan. 21, 2025), Dkt. 18. Goldner filed a letter response in opposition on February 18, 2025. *See* Letter from Goldner to the Court (Feb. 18, 2025), Dkt. 25. Plaintiffs filed a letter reply on February 20, 2025. *See* Letter from Plaintiffs to the Court (Feb. 20, 2025), Dkt. 26.

On February 28, 2025, Plaintiffs filed a letter motion for sanctions against Goldner regarding the affirmative defenses asserted in his Answer. *See* Letter from Plaintiffs to the Court (Feb. 28, 2025), Dkt. 30. Goldner filed a responsive letter in opposition on March 3, 2025, *see* Letter from Goldner to the Court (Mar. 3, 2025), Dkt. 31, and Plaintiffs filed a reply on March 12, 2025, *see* Letter from Plaintiffs to the Court (Mar. 12, 2025), Dkt. 33.

At a status conference on March 18, 2025, Magistrate Judge Marutollo granted Goldner's request for leave to file an amended answer, thereby denying Plaintiffs' motion to strike Goldner's affirmative defenses without prejudice to renewal. *See* Minute Entry, dated Mar. 18, 2025. Judge Marutollo additionally denied Plaintiffs' motion for sanctions. *See id.*

On March 27, 2025, Goldner filed his amended answer, which includes eighteen affirmative defenses and eight counterclaims. *See* Amended Answer with Counterclaims, Dkt. 38 ("Am. Answer").

Plaintiffs filed their omnibus motion for summary judgment and to dismiss on October 6, 2025, and it was fully briefed as of October 9, 2025. *See supra* note 2. Plaintiffs filed their motion to strike portions of the Goldner Declaration on October 6, 2025, and it was fully briefed as of November 10, 2025. *See supra* note 3.

**LEGAL STANDARDS**

### A.  Summary Judgment Standard

"A movant is entitled to summary judgment only if 'there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'"  *Arkorful v. N.Y.C. Dep't of Educ.*, 712 F. Supp. 3d 336, 348 (E.D.N.Y. 2024) (quoting FED. R. CIV. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)).  Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  *Celotex*, 477 U.S. at 322.  "An issue of fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Frost v. N.Y.C. Police Dep't*, 980 F.3d 231, 242 (2d Cir. 2020) (quoting *SCR Joint Venture L.P. v. Warshawsky*, 559 F.3d 133, 137 (2d Cir. 2009)).  "A fact is material if it might affect the outcome of the suit under governing law." *Id.*

The movant bears the burden of "demonstrating the absence of a genuine issue of material fact."  *Celotex,* 477 U.S. at 323.  "Once the moving party has asserted facts showing that the non-movant's claims cannot be sustained, 'the nonmoving party must come forward with specific facts showing that there is a genuine issue for trial.'"  *Arkorful*, 712 F. Supp. 3d at 348 (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).  "While 'circumstantial evidence may be . . . sufficient to raise a genuine issue of material fact precluding the grant of summary judgment,' a party cannot survive a motion for summary judgment by relying on 'mere speculation or conjecture as to the true nature of the facts.'"  *Id.* (first quoting *Gayle v. Gonyea*, 313 F.3d 677, 684 (2d Cir. 2002); then quoting *Hicks v. Baines*, 593 F.3d 159, 166 (2d Cir. 2010)).

"In determining whether there is a genuine issue of material fact, a court evaluates the whole record, resolving all ambiguities and drawing all permissible factual inferences in favor of the nonmovant." *Sylla v. N.Y.C. Dep't of Educ.*, 664 F. Supp. 3d 311, 322 (E.D.N.Y. 2023) (citing *Tracy v. Freshwater*, 623 F.3d 90, 95 (2d Cir. 2010)). "It is a settled rule that credibility assessments, choices between conflicting versions of the events, and the weighing of evidence are matters for the jury, not for the court on a motion for summary judgment." *McClellan v. Smith*, 439 F.3d 137, 144 (2d Cir. 2006).

### B. Motion to Dismiss Standard

#### 1. Federal Rule of Civil Procedure 12(b)(1)

A motion to dismiss for lack of standing is construed as a motion to dismiss under Federal Rule of Civil Procedure 12(b)(1) ("Rule 12(b)(1)"). *See Carter v. HealthPort Techs., LLC*, 822 F.3d 47, 54 (2d Cir. 2016). While the Court must take all facts alleged in the pleading as true and draw all reasonable inferences from the pleading, it is nonetheless the plaintiff's burden to establish standing under Article III of the Constitution. *Id*. at 56-57 (distinguishing between facial and fact-based standing challenges). To establish standing, a plaintiff must allege that it has (1) suffered an injury-in-fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision. *See id*. at 55 (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 559–60 (1992)); *see also Lujan*, 504 U.S. at 561 (stating that each element of the standing inquiry "must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, *i.e.,* with the manner and degree of evidence required at the successive stages of the litigation.").

**2. Federal Rule of Civil Procedure 12(b)(6)**

To survive a motion to dismiss for failure to state a claim for relief pursuant to Federal Rule of Civil Procedure 12(b)(6) ("Rule 12(b)(6)"), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *Hogan v. Fischer*, 738 F.3d 509, 514 (2d Cir. 2013). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678; *Hogan*, 738 F.3d at 514. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678; *see also Pension Benefit Guar. Corp. ex rel. St. Vincent Cath. Med. Ctrs. Ret. Plan v. Morgan Stanley Inv. Mgmt. Inc.*, 712 F.3d 705, 718 (2d Cir. 2013).

Determining whether a plausible claim for relief is stated is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. Courts "may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint." *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010).[7] "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678; *see also Pension Benefit Guar. Corp.*, 712 F.3d at 717 ("Although for the purposes of

---

[7] Federal Rule of Civil Procedure 12(d) ("Rule 12(d)") vests courts with the discretion to decide whether to convert a Rule 12(b)(6) motion to dismiss into a Rule 56 motion for summary judgment. *Kristoffersson v. Port Jefferson Free Union Sch. Dist.*, 23-7232-cv, 2024 WL 3385137, at *2-3 (2d Cir. July 12, 2024). Rule 12(d) provides: "If, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56. All parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." Because the Court has not relied on materials beyond the four corners of the pleadings in conjunction with resolving the Rule 12(b)(6) motion, the Court does not convert this motion into a motion for summary judgment.

10

a motion to dismiss we must take all of the factual allegations in the complaint as true, we 'are not bound to accept as true a legal conclusion couched as a factual allegation.'" (quoting *Iqbal*, 556 U.S. at 678)). "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Pension Benefit Guar. Corp.*, 712 F.3d at 717 (quoting *Iqbal*, 556 U.S. at 679).

## DISCUSSION

### A. Plaintiffs' Motion for Summary Judgment

Plaintiffs move for summary judgment on the basis that have they "established a prima facie case for recovery against Goldner under the Complaint's First through Fifth Counts for breach of each of the five Notes at issue." Mot. at 3. In response, Goldner asserts that Plaintiffs' sworn filings contradict the claim that they are the present holders of the Notes. Opp'n at 6-7.[8] Goldner additionally raises several defenses to enforcement. *Id.* at 8-16. The Court addresses Plaintiffs' prima facie case for recovery first, before turning to Goldner's defenses.

### 1. Prima Facie Case for Recovery

Each Note, as well as the Omnibus Amendments, are governed by New York law. *See* First Note § 15; Second Note § 14; Third Note § 15; Fourth Note § 15; Fifth Note § 15; Omnibus Amendments § 17(k). "To establish a prima facie case for the recovery of a breach of contract to pay a promissory note, the plaintiff simply must show proof of the note and the defendant's failure to pay by its maturity date." *Khotovitskaya v. Shimunov*, 723 F. Supp. 3d 235, 242 (E.D.N.Y. 2024) (quoting *HICA Educ. Loan Corp. v. Yunatanov*, 11-CV-488 (SJ), 2013 WL 3288452, at *2 (E.D.N.Y. June 28, 2013)). Plaintiffs must show that "(1) the defendant signed the promissory note; (2) the party seeking enforcement is the present holder or owner of the note; and (3) that the

---

[8] As Goldner's Opposition is unpaginated, the page numbers noted herein refer to the pagination automatically generated by ECF.

11

note is in default." *HICA*, 2013 WL 3288452 at *2. Actions for recovery on a promissory note are therefore "appropriately decided by motion for summary judgment because a promissory note stands on its own and establishes the plaintiff's right to payment." *Crotona 1967 Corp. v. Vidu Bros. Corp.*, 925 F. Supp. 2d 298, 307 (E.D.N.Y. 2013).

Here, Plaintiffs have established their prima facie case. It is undisputed that between May 20, 2022, and April 26, 2023, Plaintiffs loaned Defendants the principal amount of $20,600,000, as memorialized by the five Notes. *See* 56.1 Statement ¶¶ 1-2, 4-6; First Note; Second Note; Third Note; Fourth Note; Fifth Note.[9] As reflected by each Note, Goldner promised to jointly and severally repay each loan. *Id.* ¶ 7; First Note; Second Note; Third Note; Fourth Note; Fifth Note; *see United States v. Yalincak*, 30 F.4th 115, 122 (2d Cir. 2022) ("Where two co-defendants in a civil lawsuit are found jointly and severally liable for the full amount of the damages, the plaintiff can collect that entire amount from one defendant, in full, without collecting anything from the other defendant."). Goldner signed each note on behalf of GCM and in his personal capacity. 56.1 Statement ¶ 15; First Note; Second Note; Third Note; Fourth Note; Fifth Note. Furthermore, it is undisputed that Goldner defaulted under the Notes by failing to meet his payment obligations. *Id.* ¶¶ 27-35; Saidoff Decl. ¶ 13.

Contrary to Plaintiffs' claim that Capital Source remains the holder of the First Note and Capital Foresight remains the holder of the Second through Fifth Notes, *see* Saidoff Decl. ¶¶ 15-16, Goldner asserts that Plaintiffs have failed to prove that they are the present holders of each Note. *See* Opp'n at 6-7. Specifically, Goldner contends that Plaintiffs have taken inconsistent positions as to which entity holds each Note in their prior filings in this case and in the bankruptcy

---

[9] Specifically, Capital Source loaned Defendants the amount memorialized in First Note. *See* First Note. Capital Foresight loaned Defendants the amounts memorialized in the Second through Fifth Notes. *See* Second Note; Third Note; Fourth Note; Fifth Note.

proceeding against GCM, thereby reflecting a factual dispute that precludes summary judgment. *See id.* The Court acknowledges the language in Plaintiffs' Complaint suggesting that both Capital Source and Capital Foresight loaned Defendants the amounts reflected in each Note. *See* Compl. ¶ 12. The Court also acknowledges the Proofs of Claims submitted in the GCM bankruptcy proceeding suggesting that both entities loaned Defendants the amounts reflected in each Note. *See* Opp'n, Exhibit E, Dkt. 91-5. However, these slight inconsistencies, if even inconsistencies at all, are not material, for they do not suggest that neither Plaintiff has a right to recovery under the Notes. Further, Goldner presents no other evidence to controvert Plaintiffs' assertion that Capital Source remains the holder of the First Note and Capital Foresight remains the holder of the Second through Fifth Notes. *See generally* Opp'n.

Accordingly, Plaintiffs have made out a prima facie case for recovery under each Note. *See Khotovitskaya*, 723 F. Supp. 3d at 242.

### 2. Defenses to Enforcement

Next, the Court turns to defenses to enforcement. "Once a prima facie case is made, the burden then shifts to the defendant to prove the existence of a defense against the note creating a triable issue of fact." *Khotovitskaya*, 723 F. Supp. 3d at 242; *see also Novick v. AXA Network, LLC*, 07 Civ. 7767 (AKH), 2009 WL 2753201, at *1 (S.D.N.Y. Aug. 27, 2009) ("Under New York law, which governs actions on the note . . . , the holder of a promissory note is entitled to judgment as a matter of law upon making a showing of execution and default, unless the obligor demonstrates the existence of a triable issue of fact."), *aff'd*, 642 F.3d 304 (2d Cir. 2011). "To establish a bona fide defense, the defendant may not rely on conclusory allegations, but instead must show by admissible evidence 'a genuine and substantial issue rebutting [the note] holder's entitlement to payment.'" *Camofi Master LDC v. Coll. P'ship, Inc.*, 452 F. Supp. 2d 462, 471

(S.D.N.Y. 2006) (quoting *Internet L. Libr., Inc. v. Southridge Cap. Mgmt.*, 01 Civ. 6600(RLC), 2005 WL 3370542, at *7 (S.D.N.Y. Dec. 12, 2005)). "[W]here there is an absence of evidence to support an essential element of a defense, with respect to that defense 'there can be no genuine issue as to any material fact since a complete failure of proof concerning an essential element of the [affirmative defense] necessarily renders all other facts immaterial.'" *FDIC v. Giammettei*, 34 F.3d 51, 54 (2d Cir. 1994) (quoting *Celotex*, 477 U.S. at 323). "A 'stringent standard' applies to evaluating a defense to a negotiable instrument among 'sophisticated business people.'" *Camofi*, 452 F. Supp. 2d at 471 (quoting *Citicorp Int'l Trading Co. v. W. Oil & Refin. Co.*, 790 F. Supp. 428, 434 (S.D.N.Y. 1992); *see also Citibank, N.A. v. Plapinger*, 485 N.E.2d 974, 977 (N.Y. 1985).

### a. Release of Affirmative Defenses

Goldner asserts that the Omnibus Amendments do not cover the release of his affirmative defenses. Opp'n at 8-11. Plaintiffs argue that "[e]ven if Goldner could identify some material bona fide defense to enforcement of the Notes . . . Goldner released any affirmative defenses in the two Omnibus Amendments to the Loan Documents that Goldner signed in March and April 2023, respectively." Mot. at 6.

"A release is a species of contract and 'is governed by principles of contract law.'" *Golden Pacific Bancorp v. F.D.I.C.*, 273 F.3d 509, 514 (2d Cir. 2001) (quoting *Bank of Am. Nat'l Tr. & Sav. Ass'n v. Gillaizeau*, 766 F.2d 709, 715 (2d Cir. 1985)). "Under New York law, a release—like any contract—must be construed in accordance with the intent of the parties who executed it." *Id.* at 515. "A release will not be given effect unless it contains an 'explicit, unequivocal statement of a present promise to release [a party] from liability.'" *Id.* (quoting *Gillaizeau*, 766 F.2d at 713). Like any contract, whether a release is ambiguous is a question of law for the Court. *Id.* at 514. "The language of a contract is ambiguous if it is 'capable of more than one meaning when viewed

14

objectively by a reasonably intelligent person who has examined the context of the entire integrated agreement.'" *Krumme v. WestPoint Stevens Inc.*, 238 F.3d 133, 138-39 (2d Cir. 2000) (quoting *Seiden Assocs. v. ANC Holdings*, 959 F.2d 425, 428 (2d Cir. 1992)). "Where a contract's language is ambiguous, the differing interpretations of the contract present a triable issue of fact." *Gillaizeau*, 766 F.2d at 715.

Here, there is ambiguity and therefore a triable issue of fact as to whether Goldner released his affirmative defenses. Section 14(a) of each of the Omnibus Amendments states in pertinent part:

> [Goldner, GCM, and others], on behalf of themselves, their respective successors and assigns, and each of them, do each hereby forever relieve, release, acquit and discharge [Plaintiffs] and their predecessors, successors and assigns, and their respective past and present attorneys, accountants, insurers, representatives, affiliates, partners, subsidiaries, officers, employees, directors, and shareholders, and each of them (collectively, the "Released Parties"), **from any and all claims, debts liabilities, demands, obligations, promises, acts, agreements, costs and expenses (including, but not limited to, attorneys' fees), damages, injuries, actions and causes of action, of whatever kind or nature, whether legal or equitable, known or unknown, suspected or unsuspected, contingent or fixed, which [Goldner, GCM, and others], or any of them, now own or hold or have at any time heretofore owned or held or may at any time hereafter own or hold against the Released Parties**, or any of them, by reason of any acts, facts, transactions or any circumstances whatsoever occurring or existing through the date of this Amendment, including, but not limited to, those based upon, arising out of, appertaining to, or in connection with the Recitals above, the Loans, the Loan Documents, the facts pertaining to this Amendment, any collateral heretofore granted to [Plaintiffs] or granted in connection herewith, or to any other obligations of [Goldner, GCM, and others] to [Plaintiffs], all jointly and severally.

First Omnibus Amendment § 14(a) (emphasis added); Second Omnibus Amendment § 14(a) (emphasis added). Although Plaintiffs contend that "[t]his comprehensive and all-inclusive language identifying what was being released makes it clear that Goldner is releasing everything, including defenses," Mot. at 9, the term "defenses" is not included in the release, *see* First Omnibus Amendment § 14(a); Second Omnibus Amendment § 14(a). Further, Section 16(c) of the Second

Omnibus Amendment specifically uses the term "defenses" when discussing management and control. *See* Second Omnibus Amendments § 16(c) ("Borrower and Joinder Parties, and each of them, do not have any claims, causes of action or defenses to their obligations to Lenders, individually or collectively, based on any allegations of management or control exercised by Lenders."). "As the New York Court of Appeals has stated, 'where an agreement is negotiated between sophisticated, counseled business people negotiating at arm[']s length, . . . courts should be extremely reluctant to interpret an agreement as impliedly stating something which the parties have neglected to specifically include.'" *Utica Mut. Ins. v. Fireman's Fund Ins.*, 957 F.3d 337, 346 (2d. Cir. 2020) (quoting *Glob. Reinsurance Corp. of Am. v. Century Indem. Co.*, 91 N.E.3d 1186, 1193 (N.Y. 2017)).

Accordingly, a triable issue of fact exists as to whether Goldner released his affirmative defenses. *See Gillaizeau*, 766 F.2d at 715.

### b.  The MOU

Next, Goldner contends that the May 31, 2023, MOU and its merger clause modified the Notes and the Omnibus Amendments. Opp'n at 11-14. Plaintiffs argue that the MOU does not serve as a defense to the enforcement of the Notes. Mot. at 10-13.

The MOU and its merger clause did not modify or supersede the Notes and Omnibus Amendments. "Under New York law, '[i]t is well established that a subsequent contract regarding the same matter will supersede the prior contract.'" *Applied Energetics, Inc. v. NewOak Cap. Mkts., LLC*, 645 F.3d 522, 526 (2d Cir. 2011) (quoting *Barnum v. Millbrook Care Ltd. P'ship*, 850 F. Supp. 1227, 1236 (S.D.N.Y. 1994)). However, "a subsequent contract not pertaining to 'precisely the same subject matter' will not supersede an earlier contract unless the subsequent contract has definitive language indicating it revokes, cancels or supersedes that specific prior

contract." *Alessi Equip., Inc. v. Am. Piledriving Equip., Inc.*, 578 F. Supp. 3d 467, 504 (S.D.N.Y. 2022) (quoting *A & E Television Networks, LLC v. Pivot Point Ent., LLC*, 10 Civ. 09422(AJN), 2013 WL 1245453, at *10 (S.D.N.Y. Mar. 27, 2013)).

Here, the MOU does not contain "precisely the same subject matter" as the Notes and Omnibus Amendments. *See id.* at 504. Rather, the MOU is an agreement between Capital Foresight and GCM concerning a specific transaction, while the Notes and Omnibus Amendments are agreements between Capital Source and Capital Foresight as lenders and Goldner, GCM, and others as debtors. *See* MOU §§ 2-4 (outlining Capital Foresight's acquisition of certain assets, namely skilled nursing facilities, from GCM and its affiliates); First Note; Second Note, Third Note; Fourth Note; Fifth Note; First Omnibus Amendment; Second Omnibus Amendment; *see also Nat'l Lab. Rels. Bd. v. Newark Elec. Corp.*, 14 F.4th 152, 166-67 (2d Cir. 2021) (noting how the doctrine of merger "applies only when two successive agreements governing the same subject matter are entered into by identical parties"). The MOU does not contain any provision purporting to modify, waive, or release any rights or obligations under the Notes and Omnibus Amendments, nor does the MOU mention the Notes and Omnibus Amendments. *See generally* MOU.

Goldner's argument to the contrary is unavailing. Section 13.5 states that "[t]his MOU and the Schedules attached hereto contain all agreements of the parties with respect to any matter mentioned herein. No prior agreement of understanding to such matter shall be effective." MOU § 13.5. As discussed above, the MOU does not involve the same subject matter as the Notes and Omnibus Amendments, nor does it contain inconsistent rights and obligations. Consequently, the general merger clause does not override the Notes and Omnibus Amendments. *See Shehadeh v. Horizon Pharma USA, Inc.*, 20 Civ. 8107 (AT), 2021 WL 4176254, at *3 (S.D.N.Y. Sept. 14, 2021) ("District courts in this Circuit have subsequently agreed that 'general merger clauses'

stating that the later contract supersedes 'all prior agreements' only supersede an earlier contract 'to the extent that [the agreements] conflict.'" (quoting *Crye Precision*, 2019 WL 6388636, at *6)).

### c. The May 2023 Email

Goldner contends that the May 2023 Email from Saidoff to Goldner, which was sent prior to the execution of the MOU, also modifies the Notes and Omnibus Amendments.  Opp'n at 15-16.  Plaintiffs state that they do not.  Reply at 7-8.

The May 2023 Email does not modify or supersede the Notes and Omnibus Amendments. In the email, Saidoff states: "The real deal between us is that, I will buy the properties, I will be entitled to a return of 11-12% on $78M, then we split the profits on the Opco.  When we sell anything above, I think $91,000 per bed, don't recall the exact number, would be split."  May 2023 Email.  Saidoff's message does not mention the Notes and Omnibus Amendments, and when viewed alongside the subsequent MOU, it is apparent that Saidoff is referring to profit sharing under that agreement.  *See generally* MOU.  As discussed above, the MOU does not involve the same subject matter of the Notes and Omnibus Amendments.  Moreover, the May 2023 Email is merely a statement by Saidoff.  *See generally* May 2023 Email.  It does not contain the elements necessary for a valid contract or contractual modification.  *See Leibowitz v. Cornell Univ.*, 584 F.3d 487, 507 (2d Cir. 2009) (holding that valid contracts require "an offer, acceptance, consideration, mutual assent and intent to be bound" (quoting *Register.com, Inc. v. Verio, Inc.,* 356 F.3d 393, 427 (2d Cir. 2004)).

Accordingly, the May 2023 Email does not raise a triable issue of fact.

### B.  Plaintiffs' Motion to Dismiss

In addition to moving for summary judgment on the Notes, Plaintiffs move to dismiss all of Goldner's counterclaims under Rule 12(b)(1) for lack of standing and under Rule 12(b)(6) for failure to state a claim.  Mot. at 13-25.

### 1.  The Counterclaim Allegations

In his Amended Answer, Goldner sets forth the factual basis of his counterclaims.  Goldner alleges that he "shared extensive proprietary financial information with Saidoff," including GCM's ownership of a purchase option on a portfolio of skilled nursing facilities ("Omega Purchase Option") leased from Omega Health Investors, LLC ("Omega").  Am. Answer ¶ 94.  Goldner admits that Capital Source and Capital Foresight extended GCM $20.6 million, as reflected by the Notes but states that the loan was secured by "GCM's interests in several entities, including its valuable Town & Country Facility in Missouri ("Town & Country Facility") and the Omega Purchase Option.  In return [Plaintiffs] promised to support GCM's continued operations and growth."  *Id.* ¶ 95.

Goldner further alleges that he, relying on his relationship with Plaintiffs, "agreed to a series of pledges and amendments" to the loan agreements designed to "preserve management and control of GCM's interests in the aforementioned entities."  *Id.* ¶ 96.  Goldner goes on to discuss the MOU, alleging that it "restructured the outstanding loan obligations and define[d] a joint venture going forward" and that it "reflected and formalized the parties' understanding that [Plaintiffs] would be repaid from specific collateral, including the Omega Purchase Option and the Town & Country Facility."  *Id.* ¶ 98.  Goldner contends that he "agreed to [a] below-market sale on the belief it would reduce GCM's overall obligations and serve the mutual goal of maximizing returns."  *Id.*

Goldner then alleges that, in "May 2023, under pressure and believing the parties were collaborating to restructure debt and realize shared equity, Goldner caused Missouri MT Holdings LLC (a GCM affiliate) to sell the Town & Facility to [Plaintiffs]." *Id.* ¶ 101. Goldner further alleges that Plaintiffs then engaged in a scheme to manufacture default under the Notes, whereby Plaintiffs refused to fund payments for the Omega facilities and "orchestrated a rent strike" by ceasing rent payments across GCM facilities. *Id.* ¶¶ 102-103. According to Goldner, "[Plaintiffs'] strategy was simple: bleed GCM dry, trigger defaults under the loan agreements, and seize control of Omega." *Id.* ¶ 103

From these allegations, Goldner asserts eight counterclaims: (1) breach of contract; (2) breach of the implied covenant of good faith and fair dealing; (3) breach of fiduciary duty; (4) fraudulent misrepresentation; (5) unjust enrichment; (6) conversion; (7) declaratory relief that the Notes and Omnibus Amendments are null void; and (8) accounting.

## 2. Standing to Assert Counterclaims

Plaintiffs contend that Goldner's first through sixth and eighth counterclaims should be dismissed pursuant to Rule 12(b)(1) for lack of standing because they are based on the alleged loss of GCM's assets, not Goldner's. Mot. at 14-18; *see Liberty Sackets Harbor LLC v. Vill. of Sackets Harbor*, 776 F. App'x 1, 3 (2d Cir. 2019) ("[A]bsent a direct individual injury, a company's member lacks standing to sue for an injury to the company.") *Mindspirit, LLC v. Evalueserve Ltd.*, 15 Civ. 6065 (PGG), 2016 WL 11707410, at *4 (S.D.N.Y. Sep. 26, 2016) ("The fact that an individual closely affiliated with a corporation . . . is incidentally injured by an injury to the corporation does not confer on the injured individual standing to sue on the basis of either that indirect injury or the direct injury to the corporation." (quoting *New Castle Siding Co. v. Wolfson*, 468 N.Y.S.2d 20, 21 (2d Dep't 1983), *aff'd,* 470 N.E.2d 868 (N.Y. 1984))). Specifically, Plaintiffs

contend that the counterclaims "are based on alleged loss of 'GCM's interests' in [the] Town & Country Facility and the Omega Purchase Option." Mot. at 15 (citing Am. Answer ¶¶ 94-95, 101-103). Based on the counterclaim allegations and the allegations in the Verified Complaint in the GCM bankruptcy proceeding, these assets were owned by GCM or its debtor affiliates, not Goldner. *See* Am. Answer ¶ 94-95; *id.*, Exhibit A, Dkt. 38-1 ("Bankruptcy Complaint") (alleging that "Goldner Capital's companies had a contractual right to the [Omega] Purchase Option").[10] Therefore, according to Plaintiffs, "any purported claims based on the alleged loss of such assets belong to GCM or its affiliates, not Goldner." Mot. at 16.

Goldner does not dispute that his first through sixth and eighth counterclaims are based, at least in part, on GCM's alleged loss of assets, namely the Town & Country Facility and the Omega Purchase Option. *See* Opp'n at 16-21. Goldner also does not address standing for each individual counterclaim. *See id.* Rather, Goldner asserts four grounds for standing. Opp'n at 16-21.[11]

First, Goldner argues that he has standing based on the loss of assets pledged as collateral pursuant to a Pledge and Security Agreement dated May 20, 2022, following the execution of First Note. *See* Compl., Exhibit 8, Dkt. 1-2 ("Pledge Agreement"). Goldner, along with GCM, was a pledgor and signatory to the Pledge Agreement. *See id.* But Goldner admits that neither the Omega Purchase Option nor the Town & Country Facility were pledged as collateral in the Pledge Agreement. *See* Opp'n at 17 n.6; *see also* Pledge Agreement Schedule 1. Moreover, the notion

---

[10] The Bankruptcy Complaint is attached to Goldner's Amended Answer. Bankruptcy Complaint; *see Offor v. Mercy Med. Ctr.*, 676 F. App'x 51, 53 (2d Cir. 2017) (noting that courts "may consider documents attached to the complaint in deciding a motion to dismiss."). It is also attached as an exhibit to the Goldner Declaration submitted in opposition to Plaintiffs Motion. *See* Goldner Decl., Exhibit D, Dkt. 91-4.

[11] As party a "must demonstrate standing separately for each form of relief sought," *Friends of the Earth, Inc. v. Laidlaw Env. Serv. (TOC), Inc.*, 528 U.S. 167, 185 (2000), the Court addresses the arguments raised by Goldner but does not discuss standing for each counterclaim as Goldner fails to do so. *See also Thompson v. County of Franklin*, 15 F.3d 245, 248 (2d Cir. 1994) ("[I]t is the burden of the of the party who seeks the exercise of jurisdiction in his favor [to] clearly allege facts demonstrating that he is a proper party to invoke judicial resolution of the dispute." (citations omitted)).

that Goldner has standing to enforce the Pledge Agreement is not relevant to Goldner's counterclaims. Goldner is not seeking to enforce the Pledge Agreement in his counterclaims, nor does he allege that Plaintiffs breached the Pledge Agreement such that he was harmed personally. *See generally* Am. Answer; Opp'n. Simply put, the Pledge Agreement does not grant Goldner any interest in the Omega Purchase Option or the Town & Country Facility that would permit him to recover for the loss of those assets. Accordingly, the Pledge Agreement does not confer Goldner with standing.

Second, Goldner argues that his counterclaims are not only based on the loss of GCM's assets but also on "Plaintiffs' deception, breach of their duty of good faith and fair dealing, and manipulation." Opp'n at 19. In support of this argument, Goldner relies on the Bankruptcy Court's denial of Plaintiffs' motion to dismiss GCM's claim for breach of the implied covenant of good faith and fair dealing in the GCM Bankruptcy proceeding. *See* Goldner Decl., Exhibit C, Dkt. 91-3 ("Bankruptcy MTD Denial").[12] Goldner asserts that in denying the motion to dismiss, the Bankruptcy Court "credited allegations" that Saidoff "used his role as a mentor to deceive [Goldner] and infiltrate his business" and "'orchestrated a scheme' to manufacture defaults under the loans in issue and prevent their repayment, which triggered Goldner's liability under the Notes." Opp'n at 19-20 (quoting Bankruptcy MTD Denial at 2-3). However, rather than "credit[ing] [the] allegations," the Bankruptcy Court merely determined that GCM's complaint in the Bankruptcy proceeding stated a claim for breach of the implied covenant of good faith and fair dealing. *See generally* Bankruptcy MTD Denial. Moreover, that ruling applied to GCM's claims, not Goldner's. Goldner is not a party to the Bankruptcy proceeding. *See* Bankruptcy MTD Denial.

---

[12] "A district court reviewing a motion to dismiss may also consider documents of which it may take judicial notice, including pleadings and prior decisions in related lawsuits." *Gertskis* v. *U.S. E.E.O.C.*, 11 Civ. 5830 (JMF), 2013 WL 1148924, at *1 (S.D.N.Y. Mar. 20, 2013), *aff'd sub nom. Gertskis* v. *E.E.O.C.*, 594 F. App'x 719 (2d Cir. 2014).

It therefore does not follow that the Bankruptcy Court's denial of the motion to dismiss GCM's claims supports the conclusion that Goldner has standing to assert those claims in this case. *See Liberty Sackets Harbor LLC*, 776 F. App'x at 3 (noting that a company's member lacks standing to sue for injury to the company absent a direct individual injury). Accordingly, the Bankruptcy MTD Denial does not confer Goldner with standing.

Third, Goldner contends that he has standing "based on Plaintiffs' breach of multiple contracts and agreements, i.e., the MOU, May 2023 Email, Pledge Agreement, Notes, etc., of which Goldner is a party." Opp'n at 21. However, as noted by Plaintiffs, "[t]hat Goldner was a party to any of these alleged agreements does not automatically confer standing on Goldner." Reply at 13. Goldner does not demonstrate that he has personally suffered an injury as a result of a breach of those agreements, nor does he identify how those agreements were breached. *See* Opp'n at 20. Goldner has therefore failed to show how his being a party to those agreements confers him with standing.

Finally, Goldner contends that the parties "were acting as co-joint venturers which further provides standing to assert a breach of duty fiduciary counterclaim." *Id.* (citing *Blue Chip Emerald v. Allied Partners*, 750 N.Y.S.2d 291, 294 (2d Dep't 2002)). However, as noted by Plaintiffs, *Blue Chip* stands for the proposition that a fiduciary relationship exists between joint-venturers — the case does not address the issue of standing. Reply at 14; *see Blue Chip*, 750 N.Y.S.2d at 294 (discussing the fiduciary duties owed between co-venturers and to the venture itself). Moreover, while Goldner alleges that the parties created a joint venture through the MOU, Am. Answer ¶¶ 97, 100, Goldner does not demonstrate that he, rather than GCM, suffered harm from any alleged breach of that fiduciary duty, *see Yukos Capital S,A.R.L. v. Feldman*, 977 F.3d 216, 241 (2d Cir. 2020) (holding that a claim for breach of fiduciary duty requires "damages directly caused by the

defendant's misconduct"); *Liberty Sackets Harbor LLC*, 776 F. App'x at 3. Goldner's allegations of a fiduciary relationship therefore fail to confer with him standing for his breach of fiduciary duty counterclaim.

Accordingly, as Goldner has failed to establish injury beyond GCM's loss of assets, he has failed to establish standing to assert his first through sixth and eighth counterclaims. As Goldner failed to establish standing, these counterclaims are dismissed and do not provide a defense against the Notes creating a triable issue of fact. *See Khotovitskaya*, 723 F. Supp. 3d at 242.

### 3. Failure to State Claims

Plaintiffs also move to dismiss all of Goldner's counterclaims for failure to state a claim. Mot. at 25. Goldner asserts that each counterclaim is legally sufficient. Opp'n at 21-29. Notwithstanding the Court's dismissal of the counterclaims for lack of standing, the Court addresses each counterclaim in turn.

### a. First Counterclaim – Breach of Contract

Goldner's first counterclaim for breach of contract alleges that Plaintiffs breached various agreements, including the MOU, by failing to fund and/or restructure debt and preserve GCM's assets. Am Answer ¶ 116. Plaintiffs contend that these vague and conclusory allegations are insufficient because they fail to allege how Goldner was damaged. Mot. at 24. In response, Goldner asserts that "Plaintiffs breached, at a minimum, Section 4 of the MOU which expressly required Profit Sharing with Goldner." Opp'n at 24.

Goldner has failed to state a counterclaim for breach of contract. "Under New York law, an action for breach of contract requires proof of (1) a contract; (2) performance of the contract by one party; (3) breach by the other party; and (4) damages." *Rexnord Holdings, Inc. v. Bidermann*, 21 F.3d 522, 525 (2d Cir. 1994). Here, the counterclaim does not specifically allege how Plaintiffs

24

breached any contract. *See* Am. Answer ¶¶ 93-105, 116. Goldner cannot now amend his pleadings to allege that Plaintiffs breached a specific profit-sharing provision of the MOU. *See Soules v. Conn., Dep't of Emergency Servs. & Pub. Prot.*, 882 F.3d 52, 56 (2d Cir. 2018) ("[P]arties may not amend pleadings through motion papers."). Further, Goldner is not a party to the MOU, and he does not allege how he suffered any damage as a result of its breach. *See* MOU; Am. Answer ¶ 116. To the extent that Goldner alleges a breach of the May 2023 Email, Opp'n at 24, the Court has already determined that the May 2023 Email does not constitute an enforceable agreement. To the extent that Goldner claims Plaintiffs breached some other agreement, Goldner fails to explain what the agreements are, how they were breached, and how he was harmed by any breaches. *See* Am. Answer ¶¶ 93-105, 116; Opp'n at 23-25.

Accordingly, Goldner's counterclaim for breach of contract is dismissed for the additional reason that it fails to state a claim upon which relief may be granted.

### b. Second Counterclaim – Breach of Implied Covenant of Good Faith and Fair Dealing

Goldner's second counterclaim for breach of the implied covenant of good faith and fair dealing alleges that Plaintiffs violated the covenant by "refusing and failing to perform pursuant to the agreements between [Plaintiffs] and [Goldner] by, amongst other things, wrongly conspiring to starve [Goldner] and affiliated entities out of income thereby causing any purported default that may have occurred." Am. Answer ¶ 117. Plaintiffs contend that the breach of the implied covenant counterclaim is redundant of the breach of contract counterclaim. Mot. at 19. Goldner argues that the breach of-the implied covenant counterclaim is broader than his breach of contract counterclaim. Opp'n at 23.

Goldner has failed to state a counterclaim for breach of the implied covenant. "Under New York law, a covenant of good faith and fair dealing is implicit in all contracts during the course of

25

contract performance." *Tractebel Energy Mktg. v. AEP Power Mktg.*, 487 F.3d 89, 98 (2d Cir. 2007). This covenant prohibits parties to a contract from doing "anything which will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract." *Id.* "[W]hen a plaintiff claims a breach of the implied covenant of good faith and fair dealing based on the same facts as a breach of contract claim, the claim for the breach of the implied covenant must be dismissed as duplicative of the breach of contract claim." *Gan v. GSUIG Real Estate Member LLC*, 797 F. Supp. 3d 69, 102 (E.D.N.Y. 2025) (quoting *Hadami, S.A. v. Xerox Corp.*, 272 F. Supp. 3d 587, 598 (S.D.N.Y. 2017)), *aff'd,* 2026 WL 1145891 (2d. Cir. Apr. 28, 2026). Here, the breach of the implied covenant counterclaim is redundant of the breach of contract counterclaim. Both counterclaims are based on Plaintiffs' alleged breaches of agreements through conduct resulting in the loss of GCM's assets. *See* Am. Answer ¶¶ 116-17.

Further, Goldner's counterclaim for breach of the implied covenant of good faith and fair dealing is implausible for the same reasons as the breach of contract counterclaim. It does not adequately allege what rights or benefits of his were destroyed by Plaintiffs' actions, nor does it specify the relevant agreements breached. *See* Am. Answer ¶ 117. Goldner references the MOU, the Notes, the May 2023 Email and the Pledge Agreement in his Opposition, *see* Opp'n at 23, but the counterclaim also does not specify what improper acts form the basis of claim, *see* Am. Answer ¶ 117. While Goldner alleges a number of improper acts by Plaintiffs in his Opposition, he fails to explain how any of these acts deprived Goldner of the benefits he was entitled to under those agreements. *See* Opp'n at 22.

Accordingly, Goldner's counterclaim for breach of the implied covenant of good faith and fair dealing is dismissed for the additional reason that it fails to state a claim upon which relief may be granted.

### c. Third Counterclaim – Breach of Fiduciary Duty

Goldner's third counterclaim for breach of fiduciary duty alleges that Plaintiffs "assumed a position of trust and acted in a fiduciary-like role to Goldner" and that Plaintiffs "misused confidential information" to harm Goldner in breach of their fiduciary duty to him. Am. Answer ¶ 118. Plaintiffs contend that Goldner's "[c]onclusory and barebones allegations are insufficient" to "adequately allege the existence of a fiduciary relationship between Goldner and Plaintiffs." Mot. at 20. In response, Goldner argues that a fiduciary relationship exists because he was a pledgor under the Pledge Agreement. Opp'n at 25. Goldner also argues that a fiduciary relationship exists because of his long-standing relationship with Saidoff and because the MOU created a joint venture between the parties. *Id.* at 25-26.

Goldner has failed to state a counterclaim for breach of fiduciary duty. "To state a cause of action to recover damages for breach of fiduciary duty, a plaintiff must allege: (1) the existence of a fiduciary relationship, (2) misconduct by the defendant, and (3) damages directly caused by the defendant's misconduct." *Yukos*, 977 F.3d at 216 (quoting *U.S. Fire Ins. v. Raia*, 942 N.Y.S.2d 543, 545 (2d Dep't 2012). "Under New York law, a . . . pledgee of collateral is subject to a limited fiduciary duty as provided by the . . . pledge agreement." *Zorbas v. U.S. Tr. Co., N.A.*, 48 F. Supp. 3d 464, 482 n.13 (E.D.N.Y. 2014). The pledgor must adequately plead that the pledgee "used the collateral in a manner other than 'the manner in which it was agreed' to by the parties." *Id.* (quoting *Satterwhite v. Harriman Nat'l Bank & Tr. Co. of City of N.Y.,* 13 F. Supp. 489, 492 (S.D.N.Y. 1935)). Here, Goldner alleges that Plaintiffs misused confidential information concerning the Omega Purchase Option. *See* Am. Answer ¶¶ 94, 95, 118. But Goldner's pledge of collateral under the Pledge Agreement was limited to his membership in GCM Manager LLC; it did not include the Omega Purchase Option. *See* Pledge Agreement §§ 1.6, 21, Schedule 1. Put simply,

Goldner does not allege that Plaintiffs misused any collateral pledged by him in a manner inconsistent with the Pledge Agreement.

Goldner's argument that a fiduciary relationship exists due to his relationship with Saidoff is also unavailing. "A fiduciary relationship 'is grounded in a higher level of trust than normally present in the marketplace between those involved in arm's length business transactions.'" *First Hill P'ship, LLC v. BlueCrest Cap. Mgmt., Ltd.*, 52 F. Supp. 3d 625, 638 (S.D.N.Y. 2014). Lenders typically do not owe borrowers fiduciary duties, *see Oparaji v. ABN AMRO Mortg. Grp., Inc.*, 19-CV-01650 (MKB), 2020 WL 9816011, at *9 (E.D.N.Y. Sept. 18, 2020), and "a longstanding professional relationship . . . does not, standing alone, suffice to allege a special relationship of trust and confidence," *Kuriyan v. Schreiber*, 175 N.Y.S.3d 504, 505 (1st Dep't 2022); *see also DFP Mfg. Corp. v. Northrop Grumman Corp.*, 97-CV-4494, 1999 WL 33458384, at *10 (E.D.N.Y. Mar. 23, 1999) (finding that a "Mentor-Protégé Agreement" entered into by the parties did not create a fiduciary relationship "notwithstanding the use of the terms mentor and mentee"). Here, Goldner alleges an "ongoing collaboration" between himself and Saidoff that was "part partnership, part mentorship." Am. Answer ¶ 95. However, this alleged personal and professional relationship between Goldner and Saidoff, standing alone, does not transform the lender/borrower relationship to that of fiduciaries. *See Kuriyan*, 175 N.Y.S.3d at 505; *Oparaji*, 2020 WL 9816011, at *9. Beyond the personal relationship between Goldner and Saidoff, who is not a party to this action, Goldner alleges "only arm's length business transactions and no special circumstances that might give rise to a fiduciary relationship." *Benzies v. Take-Two Interactive Software, Inc.*, 73 N.Y.S.3d 557, 559 (1st Dep't 2018).

Goldner's argument regarding a fiduciary relationship arising from a joint venture likewise fails.

> A joint venture exists in New York when (1) two or more persons enter into an agreement for profit; (2) the parties intend to be associated as joint venturers; (3) each of the venturers contributes something of value to the venture, such as property, skill, knowledge or effort; (4) each co-venturer has some degree of control over the venture; and (5) the co-venturers agree to some division of profit and loss allocation.

*Cosy Goose Hellas v. Cosy Goose USA Ltd.*, 581 F. Supp. 2d 606, 620 (S.D.N.Y. 2008) (citing *Dinaco Inc. v. Time Warner, Inc.*, 346 F.3d 64, 67-68 (2d Cir. 2003)). As discussed above, a fiduciary relationship exists between joint venturers. *See Blue Chip*, 750 N.Y.S.2d at 294. Here, however, Goldner is not a party to the MOU. Regardless of whether Goldner has adequately alleged the existence of a joint venture as to GCM and Capital Foresight through the MOU, Goldner has not alleged facts showing the existence of joint venture whereby Plaintiffs owe him a fiduciary duty personally.

Accordingly, Goldner's counterclaim for breach of fiduciary duty is dismissed for the additional reason that it fails to state a claim upon which relief may be granted.

### d.  Fourth Counterclaim – Fraudulent Misrepresentation

Goldner's fourth counterclaim for fraudulent misrepresentation alleges that Plaintiffs "misrepresented their intentions, concealed their scheme to seize the Omega Purchase Option, and induced Goldner to part with valuable assets." Am. Answer ¶ 119. Plaintiffs contend that Goldner failed to plead fraud with particularity as required by Federal Rule of Civil Procedure Rule 9(b) ("Rule 9(b)"). Mot. at 21. In response, Goldner argues that Plaintiffs had a duty to disclose material information to Goldner due to their fiduciary relationship and that "Plaintiffs, through Saidoff, made numerous fraudulent misrepresentations and omissions to him." Opp'n at 28-29.

Goldner fails to state a counterclaim for fraudulent misrepresentation. The elements of fraudulent misrepresentation are: "(1) the defendant made a material false representation; (2) the defendant intended to defraud the plaintiff thereby; (3) the plaintiff reasonably relied upon the

29

representation; and (4) the plaintiff suffered damage as a result of such reliance." *Indep. Ord. of Foresters v. Donald, Lufkin, & Jenrette, Inc.*, 157 F.3d 933, 940 (2d Cir. 1998). "An omissions or failure to disclose can [also] constitute fraud where there is a duty to disclose." *DirectTV Latin America, LLC v. Park 610, LLC*, 691 F. Supp. 2d 405, 434 (S.D.N.Y. 2010) (citing *Progressive Cas. Ins. v. C.A. Reaseguradora Nacional de Venezuela*, 991 F.2d 42, 47 (2d Cir. 1993)). "In the absence of a fiduciary relationship, 'a duty to disclose may arise if: (1) one party makes a partial or ambiguous statement that requires additional disclosure to avoid misleading the other party, or (2) one party possesses superior knowledge, not readily available to the other, and knows that the other is acting on the basis of mistaken knowledge.'" *DirectTV*, 691 F. Supp. 2d at 434 (quoting *Remington Rand Corp. v. Amsterdam–Rotterdam Bank, N.V.,* 68 F.3d 1478, 1484 (2d Cir. 1995)).

Both fraudulent misrepresentation and omission are subject to the heightened pleading standards of Rule 9(b). *See Watts v. Jackson Hewitt Tax Serv. Inc.*, 579 F. Supp. 2d 334, 351 (E.D.N.Y. 2008); FED. R. CIV. P. 9(b) ("In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally."). "Under this heightened standard, a plaintiff alleging fraud must '(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." *Kyszenia v. Ricoh USA, Inc.*, 583 F. Supp. 3d 350, 358 (E.D.N.Y. 2022) (quoting *Nakahata v. N.Y.-Presbyterian Healthcare Sys., Inc.*, 723 F.3d 192, 197-98 (2d Cir. 2013)). If a claim "is premised on concealment so that the plaintiff cannot specify the time and place because no affirmative act occurred," the claim still must state "(1) what the omissions were; (2) the person responsible for the failure to disclose; (3) the context of the omissions and the manner in which they misled the plaintiff; and (4) what the defendant obtained through the

30

fraud.'" *Id.* (quoting *Woods v. Maytag Co.*, 807 F. Supp. 2d 112, 119 (E.D.N.Y. 2011)). The purpose of Rule 9(b) is to "(1) provid[e] a defendant fair notice of plaintiff's claim, to enable preparation of defense; (2) protect[] a defendant from harm to his reputation or goodwill; and (3) reduc[e] the number of strike suits." *Id.* (quoting *DiVittorio v. Equidyne Extractive Indus. Inc.*, 822 F.2d 1242, 1247 (2d Cir. 1987)). Failure to satisfy the Rule 9(b) standard is grounds for dismissal for failure to state a claim. *See Lerner v. Fleet Bank, N.A.*, 459 F.3d 273, 293 (2d Cir. 2006).

Here, Goldner's fraud counterclaim fails to satisfy these heightened pleading standards. Goldner alleges that "[Plaintiffs] used false promises of joint venture alignments to induce GCM to part with million in value-Town & Country [Facility] and the Omega Purchase Option-without just compensation." Am. Answer ¶ 105. Goldner further alleges that "[Plaintiffs] misrepresented their intentions, concealed their scheme to seize the Omega Purchase Option, and induced Defendant Goldner to part with valuable assets." *Id.* ¶ 119. Goldner, however, fails to allege a specific fraudulent statement or omission, fails to explain where, when, and by whom they were made, and fails to explain why they were fraudulent when made and how he reasonably relied on them. *See id.* ¶¶ 93-105, 119; *Kyszenia*, 583 F. Supp. 3d at 358. While Goldner lists a number a purported fraudulent misrepresentations and omissions by Plaintiffs through Saidoff in his Opposition, many of which where not alleged in his pleadings, Goldner still fails to identify the specific statements, where and when they were made, why they were fraudulent and how Goldner relied on them. *See* Opp'n at 28-29; *Kyszenia*, 583 F. Supp. 3d at 358.

Accordingly, Goldner's counterclaim for fraudulent misrepresentation is dismissed for the additional reason that it fails to state a claim upon which relief may be granted. *See Lerner*, 459 F.3d at 293.

31

### e.  Fifth Counterclaim – Unjust Enrichment

Goldner's fifth counterclaim for unjust enrichment alleges that Plaintiffs "obtained, and were unjustly enriched by millions in value from [Goldner], without fair compensation."  Am. Answer ¶ 120.  Plaintiffs contend that this counterclaim fails because Goldner has not pled that Plaintiffs benefitted at Goldner's expense and because of the existence of the MOU.  Mot. at 29.  In response, Goldner asserts that he has adequately alleged that Plaintiffs benefited at his expense.  Opp'n at 26-27.

Goldner has failed to state a counterclaim for unjust enrichment.  "A claimant seeking relief under a theory of unjust enrichment in New York must demonstrate '(1) that the defendant benefitted; (2) at the plaintiff's expense; and (3) that equity and good conscience require restitution.'"  *Leibowitz*, 584 F.3d at 509 (quoting *In re Mid-Island Hosp., Inc.*, 276 F.3d 123, 129 (2d Cir. 2002)).  Here, Goldner has not pled that Plaintiffs benefitted at Goldner's expense.  In his Opposition, Goldner refers to Plaintiffs' alleged "scheme to usurp and retain the benefit of his assets, including . . . [the] Town & Country [Facility] and the Omega Purchase Option."  Opp'n at 27.  However, Goldner's pleadings indicate that the Town & Country Facility and the Omega Purchase Option were assets owned by GCM.  *See* Am. Answer ¶¶ 94-95, 101-103.  Any alleged benefit to Plaintiffs, therefore, was at the expense of GCM, not Goldner.  *See Miller v. Mercuria Energy Trading, Inc.*, 291 F. Supp. 3d 509, 525 (S.D.N.Y. 2018) ("[T]he law views corporations as entities 'endowed with a separate and distinct existence from that of its owners.'" (quoting *Am. Protein Corp. v. AB Volvo*, 844 F.2d 56, 60 (2d Cir. 1988)).

Accordingly, Goldner's counterclaim for unjust enrichment is dismissed for the additional reason that it fails to state a claim upon which relief may be granted.

### f. Sixth Counterclaim – Conversion

Goldner's seventh counterclaim for conversion alleges that Plaintiffs "unlawfully exercised dominion over the pledged collateral and attempted to take over management of GCM's assets without lawful authority." Am. Answer ¶ 121. Plaintiffs contend that Goldner's conversion cause of action fails for several independent reasons. Mot. at 23-24. Goldner does not address the conversion counterclaim in his Opposition. *See generally* Opp'n.

Goldner has failed to state a counterclaim for conversion. "In New York, conversion is 'the unauthorized assumption and exercise of the right of ownership over goods belonging to another to the exclusion of the owner's rights.'" *AD Rendon Commc'ns, Inc. v. Lumina Americas, Inc.*, 04-CV-8832 (KMK), 2007 WL 2962591, at *4 (S.D.N.Y. Oct. 10, 2007) (quoting *Thyroff v. Nationwide Mut. Ins.*, 460 F.3d 400, 403-04 (2d Cir. 2006)). "To establish a cause of action to recover damages for conversion, a plaintiff must show legal ownership or an immediate superior right of possession to a specific identifiable thing and must show that the defendant exercised an unauthorized dominion over the thing in question to the exclusion of the plaintiff's rights." *Nat'l Ctr. for Crisis Mgmt., Inc. v. Lerner*, 938 N.Y.S.2d 138, 138-39 (2d Dep't 2012). Here, Goldner failed to address his conversion counterclaim in his Opposition and thereby abandons it. *See Folk v. City of New York*, 243 F. Supp. 3d 363, 375 (E.D.N.Y. 2017) ("In her briefing, Plaintiff failed to address her claim for malicious abuse of process, thereby abandoning it.").

Notwithstanding Goldner's failure to defend the conversion counterclaim, it is still inadequately pled. First, Goldner failed to allege that he owned or had a superior right to possession of the allegedly converted assets. *See* Am. Answer ¶¶ 93-105, 121; *Lerner*, 938 N.Y.S.2d at 138-39. Second, Goldner failed to allege that Plaintiffs exercised unauthorized dominion over the assets in question. *See* Am. Answer ¶ 98 (alleging that the Omega Purchase

33

Option was contractually assigned to Plaintiffs under the MOU); *id.* ¶ 101 (alleging that Goldner caused a GCM affiliate to sell the Town & Country Facility to Plaintiffs). Regardless of whether the Town & Country Facility and the Omega Purchase Option can be the subject of a conversion action as real and intangible property, respectively, their voluntary sale and assignment to Plaintiffs cannot constitute unauthorized dominion. *See Lerner*, 938 N.Y.S.2d at 138-39.

Accordingly, Goldner's counterclaim conversion is dismissed for the additional reason that it fails to state a claim upon which relief may be granted.

### g.  Seventh Counterclaim – Declaratory Relief

In his seventh counterclaim, Goldner seeks a declaration that the Notes and Omnibus Amendments are null and void. Am Answer ¶ 122. Plaintiffs contend that this claim serves no useful purpose and is redundant of the issues being adjudicated in Plaintiffs claims for breach of the Notes, and any of Goldner's purported defenses that the Notes are not enforceable." Mot. at 24. Goldner does not address his declaratory judgment claim in his Opposition. *See generally* Opp'n.

Goldner fails to state a counterclaim for declaratory relief. In determining whether to entertain declaratory judgment claims, trial courts consider "(1) whether the judgment will serve a useful purpose in clarifying or settling the legal issues involved; and (2) whether a judgment would finalize the controversy and offer relief from uncertainty." *Duane Reade, Inc. v. St. Paul Fire & Marine Ins. Co.*, 411 F.3d 384, 389 (2d Cir. 2005). "A counterclaim seeking a declaratory judgment may be dismissed if it is duplicative of the counterclaimants' affirmative defenses, does not broaden the scope of the dispute, or would not present a live controversy once the plaintiffs' claims have been resolved on the merits." *Alcon Vision, LLC v. Lens.com, Inc.*, 18-CV-407 (NG) (RLM), 2022 WL 1665453, at *8 (E.D.N.Y. May 25, 2022) (quoting *Nat'l Acad. of Television*

34

*Arts & Scis., Inc. v. Multimedia Sys. Design, Inc.*, 551 F. Supp. 3d 408, 430 (S.D.N.Y. 2021)). Here, Goldner seeks a declaration that the Notes and Omnibus Amendments are null and void. Am. Answer ¶ 112.  Such a declaration would "serve no useful purpose" because it is redundant of the relief sought as a defense to Plaintiffs' enforcement of the Notes.  *See Duane Reade*, 411 F.3d at 389; *Alcon* Vision, 2022 WL 1665453, at *8.

Accordingly, Goldner's declaratory judgment counterclaim is dismissed.

In summary, Goldner's counterclaims are dismissed for lack of standing and for failure to state claims.[13]  As Goldner has failed to prove the existence of a defense against the Notes creating a triable issue of fact, Plaintiffs' motion for summary judgment as to the breach of the Notes is granted.  *See Khotovitskaya*, 723 F. Supp. 3d at 242.

### C.  Plaintiffs' Motion to Strike

In opposition to Plaintiffs' motion for summary judgment and to dismiss, Goldner submitted a declaration with several attached exhibits.  *See* Goldner Decl.  Plaintiffs move to strike several paragraphs of the Goldner Declaration on the basis that such paragraphs are inadmissible. *See* Motion to Strike.  As the Court does not rely on or otherwise reference those portions of the Goldner Declaration in ruling on Plaintiffs' motion for summary judgment and to dismiss, Plaintiffs' motion to strike is denied as moot.

### CONCLUSION

For the foregoing reasons, Plaintiffs' motion for summary judgment and to dismiss Goldner's counterclaims is granted and Plaintiffs' motion to strike is denied is moot.  By June 18,

---

[13] Goldner lacks standing to assert all counterclaims except his seventh claim for declaratory relief, and Goldner's first through seventh counterclaims fail to state a claim for relief.  Although the parties did not address Goldner's eighth counterclaim for accounting when discussing failure to a state claim, Goldner nonetheless lacks standing to assert that claim and the dismissal of all the other claims renders the accounting claim moot.  *See N. Am. Knitting Mills, Inc. v. Int'l Women's Apparel, Inc.*, 99 Civ, 4643(LAP), 2000 WL 1290608, at *5 (S.D.N.Y. Sep. 12, 2000) ("Because all of plaintiff's other claims are dismissed, plaintiff's claim for . . .  accounting [is] dismissed as moot.").

2026, the parties shall submit a joint letter indicating scheduling preferences and deadlines regarding Plaintiffs' remaining claim for injunctive relief.

SO ORDERED.

_____/s/_____

ORELIA E. MERCHANT
United States District Judge

June 11, 2026
Brooklyn, New York